# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DUSTIN RUOCCO | : CIVIL NO. 3:02CV1443 (DJS)(TPS) |
| V. | : |
| DR. MINGZER TUNG, ET AL. | : FEBRUARY 15, 2004 |

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

The plaintiff submits this memorandum of law in response to the defendants' motion for summary judgment dated August 6, 2003. The plaintiff also has submitted an affidavit, his local rule 9(6)2 statement, his private and DOC medical records, and supporting evidence. The plaintiff opposes summary judgment in favor of all named defendants.

### I. FACTS

The plaintiff has been incarcerated in the custody of the Connecticut Department of Correction (DOC) continuously since August 25, 1999, when he was a pre-trial detainee until March 3, 2000, at which time he was sentenced to a prison term of eight years. At the time he came into DOC custody, the plaintiff had, and still has, serious lasting nerve damage in his right foot from a severe crush injury he sustained on September 20, 1996, breaking that foot and several toes in various places.

1.

The date of this injury to the date of his incarceration was almost exactly two years and eleven months. During that time the plaintiff continuously tried to permanently cure the lasting extreme pain which has persistently afflicted him since this injury. The plaintiff allowed every procedure suggested by his doctors to be performed, never rejecting any recommended procedures for a possible permanent cure. The plaintiff even had lumbar sympathetic blocks in his spinal area done twice in attempts to ease his constant suffering. The plaintiffs last treating private physician, DR. Sood, believed the next line of management would have to be an invasive form, trial of spinal cord stimulation. The plaintiff and DR. Sood agreed and planned to carry-out this procedure in the winter of 1999, as the plaintiff had started a new job and he would ~~have~~ not have medical insurance coverage to cover the tremendous cost of this procedure until mid october of 1999, he was paying cash for his doctors visits and medications until then too. Unfortunately, the plaintiff was incarcerated before this planned procedure could be carried-out.

During the two years and eleven months prior to his incarceration the plaintiff was treated by a team of four specialists which was assembled through a series of referrals, collectively these doctors tried many different procedures and conducted numerous tests.

The plaintiff was also evaluated by two other doctors, independant medical evaluations, done to make sure he was getting the correct line of care and all options were being investigated. Ultimately, all six physicians have decisively agreed with the line of medical procedures being tried and medications utilized.

    The entire two years and eleven months prior to being incarcerated the plaintiff was on the same type of prescription medication for pain, oxycodone (ie percocet and/or oxycontin) while the different procedures proposed by his doctors were performed, unfortunately the procedures provided no lasting benefit and he had to continue to rely on the medications for pain relief. The strict medication regimen he was prescribed helped to control his serious and very painful symptoms and with the use of the very stiff protective orthopedic boot he had to wear in order to walk, he was able to do some daily activities with more normalcy. The plaintiff was and still is very limited as to the amount of walking he can do or weight he can bear on his injured foot, and stairs have always been especially overwhelming and are avoided whenever possible, even to this day. All six doctors also agreed that a certian level of pain management is necessary to prevent unnecessary suffering and that the use of the oxycodone regimen is appropriate, as his pain symptoms have responded to it.

3.

The plaintiff was arrested on August 24, 1999, on August 25, 1999 The plaintiff was arraigned, at that arraignment the plaintiff briefly explained to the Judge his serious medical issues and that it is very dangerous for him to just stop taking the prescription medication for two years and eleven months. The Judge subsequently stated he would order the Plaintiff is to receive his prescribed medications and medical attention while at the correctional facility. The Judge had the Clerk write that order on the mittimus generated at that arraignment, the mittimus went to Bridgeport Correctional Center (BCC) with the plaintiff.

When the plaintiff arrived at BCC in the evening of August 25, 1999, in spite of the plaintiff explaining his medical needs, providing his doctors name and telephone number so his medical needs and current care could be verified, his obvious medical needs, the known dangers of just stopping the type of medications he was taking, and the Courts order for his medical attention and medications to continue. The plaintiffs medical care and medications were deliberately and abruptly stopped at that time. The orthopedic boots he needed to protect and safeguard his foot were taken away and he was ordered put into a strip cell. At this time the plaintiff was obviously becoming delirious with detoxification symptoms from not being given his lawfully prescribed medications for over twenty four hours.

4.

With the information provided these serious symptoms should have been obvious to a trained medical professional as needing attention, not punishment.

The issues of this claim have escalated far beyond denying the plaintiff adequate medical care and medication, for over two and a half years. The swaying of decisions, libel and derision were all used as part of this continuing violation. The plaintiff was deliberately denied the necessary medical care for his serious-medical needs which would have kept him from suffering, because of this grave and unforgivable breach of the standards of medical care and the egregiousness of the treatment he received from the very people entrusted with providing his medical care, especially with the plaintiffs meticulously documented medical history that clearly shows what is required to keep him from suffering. IN 2002 the plaintiff could endure no more and he filed the instant suit pursuant to 42 U.S.C. § 1983. The plaintiff filed the complaint pro se and continues to represent himself.

The plaintiff respectfully refers the court to his submitted medical records, both private and D.O.C., his statement of facts in his verified complaint, the plaintiffs local rule 9 (c) 2 statement and his affidavit in support of this objection to defendants summary judgment motion.

5.

Finally, The Plaintiff would specifically like to refer The Court to The documentary evidence he submitted, some of which clearly shows the defendants blatant subterfuge tactics and that they have outright lied to this Court in Sworn affidavits and Throughout this case as a way to mislead by misrepresenting the facts.

## II. STANDARD FOR DECIDING MOTION FOR SUMMARY JUDGMENT

A Party against whom a Claim is asserted "may, at any time, move with or without supporting affidavits for a Summary Judgment in the party's favor as to all or any part Thereof" Fed. R. Civ. P. 56(b). "Summary Judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to Judgment as a matter of law" Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 465 (2d Cir. 2001). "When determining whether there is a genuine issue of fact to be tried, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom Summary Judgment is sought" Winter v. United States, 196 F.3d 339, 346 (2d Cir 1999). "A motion for Summary Judgment must be rejected" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party'" Abdu-Brisson, 239 F.3d at 465, quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248; 106 S.Ct 2505, 91 L.Ed. 2d 202 (1986).

6.

## III. ARGUMENT

### 1. Pretrial Standard: Medical Care

From August 25, 1999 to March 3, 2000, the plaintiff was a pretrial detainee. The rights of one who has not been convicted are protected by the Due Process Clause of the Fourteenth Amendment and the duty to provide medical treatment is at least equal to those of a convicted prisoner. See generally, City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct 2979, 2983, 77 L.Ed.2d 605 (1983). Thus, a custodial official can be found liable if the official denied treatment needed to remedy a serious medical condition and did so because of deliberate indifference to that need. Authorities may not ignore lawfully prescribed medications. Mitchell v. Alvisi, 872 F.2d 577 (4th Cir. 1989)

### 2. Deliberate Indifference

Deliberate indifference by prison officials to a prisoner's serious medical or mental health need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prisoner must show intent to either deny or unreasonably delay access to needed medical or mental health care or the wanton infliction of unnecessary pain by prison personnel Id., at 104-05. A treating physician acts with deliberate indifference if his acts or omissions are sufficiently harmful.

7.

Inmates must rely on their warders aid, state has duty to supply him with adequate medical care to prevent unnecessary suffering, Cruz v. Ward, 558 F.2d 658 (2d cir. 1977). When officials willfully refuse to treat a known ailment, although they supplied asprin it was not enough, when a "easier less efficacious treatment is consciously chosen", Williams v. Vincent, 508 F.2d 541, 546; Bishop v. Stoneman, 508 F.2d 1224 (2d cir. 1974); Martinez v. Mancusi, 443 F.2d 921 (2d cir. 1970). When incarceration deprives reasonably necessary medical care which would be available to him if not incarcerated, the prison authorities must provide surrogate care, Langley v. Coughlin, 888 F.2d 252 (2d cir. 1989). Deliberate indifference by prison authorities to prisoners request for essential medical treatment is sufficient to state a claim for relief. Corby v. Conboy, 457 F.2d 251 (2d cir. 1972).

3. Pro se litigant

The plaintiff should be afforded some latitude because he is representing himself and I.L.A.P. provided him no assistance in drafting his papers. "Where a plaintiff is appearing Pro se, the complaint must be liberally construed in the plaintiffs favor and must be held to the less stringent standards than formal pleadings drafted by lawyers" Mendlow v. Seven Locks Facility, 86 F. Supp 2d 55, 56 (D. Conn 2000). See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct 594, 30 L. Ed. 2d 652 (1972).

8.

## 4. DEFENDANTS DR. DAVID STEIN, DR. J. BERKOWITZ, and NURSE MARIANNE FUCHS VIOLATED THE PLAINTIFF'S RIGHTS REGARDING MEDICAL TREATMENT UNDER THE FOURTEENTH AMENDMENT

When the plaintiff arrived at Bridgeport Correctional Center (BCC) on August 25, 1999 and the actions of these defendants which give rise to this suit occurred when the plaintiff was a pretrial detainee. Similar claims by pretrial detainees are analyzed under the due process clause of the Fourteenth Amendment. Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991). Although it is unclear whether the standard for pretrial detainees is the same as the deliberate indifference standard, the Second Circuit has held that the standard would, at the very least, require more than ordinary negligence. Id. 984.

When the plaintiff got to BCC he had scratches on his forearm and wrist and the admitting officer noticed that there was clearly something wrong with the plaintiff. The plaintiff told the officer about not having his medication and that he was not feeling well. The officer immediately sent the plaintiff to the infirmary where he was seen by defendant Fuchs. The plaintiff told nurse Fuchs about his medical issues, that he had not had his prescription medication for over twenty four hours and that he was not feeling well. He told her that the Judge had ordered he be given his prescribed medication and the order was written on his mittimus.

9.

Defendant Fuchs disregarded the courts order <u>Maclin v. Paulson</u>, 627 F.2d 83 (Ind 1980). The plaintiff gave nurse Fuchs his doctors name and phone number as well as his pharmacys phone number, he told nurse Fuchs he had been on this same narcotic medication for over two and a half years and that his doctors had told him that it is very unsafe to just stop taking this medication. In spite of, the plaintiffs rapidly deteriorating condition, he was becoming delirious from not having his lawful medication, a trained professional should have recognized <u>Liscio v. Warren</u>, 901 F.2d 274 (2d Cir. 1990). Defendant Fuchs a nurse decided of her own accord to terminate and not provide the plaintiff his medications, without any examination by her or a doctor, causing the plaintiff to suffer not only from the extreme pain the medication had blocked for so long, but he was also made to endure severe withdrawl symptoms (Ruocco Affidavit para 31).

  The plaintiff had the superficial scratches on his forearm and wrist from putting his through the bars with the handcuffs and chains on, these scratches were done unintentionally (Ruocco Affadavit para 30). Nurse Fuchs ordered the plaintiff into a strip cell and protective orthopedic boots were taken away and he was maliciously made to suffer. If nurse Fuchs actually thought the scratches on the plaintiffs arm were self-inflicted a picture of these scratches would have been taken and a incident report would have been written, neither was done, clearly establishing nurse Fuchs violated the plaintiffs rights,

10.

As for defendant DR. Steven Stein, he never saw the plaintiff while the plaintiff was in the infirmary. On October 6, 1999, the plaintiff was called to see DR. Stein. The plaintiff explained his medical needs and told him of the extreme pain he was having. Defendant Stein cut short the plaintiff, cursorily looked at the plaintiff's foot, told him to take motrin for pain in place of the oxycodone regimen. The plaintiff adamantly requested to sign releases of information so DR. Stein could review his medical records. DR. Stein agreed, however, he never got the medical records. DR. Steven Stein deliberately deprived the plaintiff of civil rights by showing deliberate indifference to his serious medical needs and denied him due process of law punishing him by depriving him of his prescribed medical treatments. The plaintiffs medical needs and medications were verified and still his treatment was deliberately interferred with. The plaintiffs medications were verified on September 1, 1999 There is a note in his D.O.C. medical file. He was denied access to medical treatment prescribed by his doctors. *Cummings V. Roberts, 628 F2d 1065 (8th cir 1980); Whisenant V. Yuam, 739 F2d 160 (4th cir 1984) The plaintiff was made to unnecessarily suffer by Defendant Stein. DR. Stein deviated from professional standards of decency violating the plaintiffs Fourteenth Amendment rights, and any reasonable person particularly someone in his position would know his actions and conduct clearly violated established statutory and constitutional rights, Therefore DR. Stein should be held accountable for his acts and not be granted Summary Judgment.

12.

Case 3:02-cv-01443-SRU    Document 65    Filed 02/20/2004    Page 12 of 15

### 5. DEFENDANT'S WARDEN GOMEZ, MAJOR SPARKS, MAJOR LAHDA, AND HEALTH SERVICES ADMINISTRATOR HELEN DORSEY VIOLATED THE PLAINTIFFS RIGHTS REGARDING MEDICAL TREATMENT UNDER THE EIGHTH AMENDMENT.

Defendants Warden Gomez, Major Lahda, Major Sparks and Health Services Administrator Helen Dorsey are all prison administrators who were repeatedly made aware of a wrong which violates civil rights, such as deliberate indifference, and fail to remedy or even investigate after learning of continuing violations does establish supervisory liability. Smith v. Meachum, 764 F. Supp 260 (D. Conn. 1991)

Each of the defendants were contacted by the plaintiff reletive to their respective position to investigate and remedy a specific situation in which the issues have given rise to his unnecessary suffering and continued violation of his civil rights. These defendants were fully informed of the unconstitutional acts occurring and they failed to act on that information establishing personal involvement. Wright v. Smith, 21 F.3d 496 (2d cir. 1994); Duncan V. Duckworth, 644 F.2d 653 (7th cir 1981); Candelaria v. Coughlin, 787 F. Supp. 368 (S.D.N.Y.), affirmed 979 F.2d 845.

Defendant Warden Gomez should not be granted summary judgment on the basis that as a administrative official he has a duty, which, in this situation he arrantly failed to do.

13.

The plaintiff on numerous occasions, both written and verbally informed defendant Gomez of the deliberate indifference to his serious medical needs, that he was being denied medically needed orthopedic footwear and he was unnecessarily being made to suffer. When the plaintiff repeatedly got no response to the numerous requests from warden Gomez, The plaintiffs mother J. Patti Lemone wrote a letter to defendant warden Gomez, requesting he be allowed to purchase the medically necessary footwear to accomodate the painful disability of the plaintiffs right foot. (see Mrs Lemone's letter dated November 13, 2002). Mrs. Lemone enclosed documentation of the plaintiffs injury and permanent disability for defendant Gomez's review. Warden Gomez, instead of investigating for himself, he relied on the very people the complaint was about. Defendant Gomez replied to Mrs Lemone, denying her request to purchase adequate footwear for the plaintiffs medical needs, making an absurd statement about "more aesthetically desirable" footwear being available on commissary. This request was about medically needed footwear used to alleviate some of the plaintiffs severe pain when he walks, not a request for fasion trendiness. Defendant Gomez was clearly personally involved and participated in violating the rights of the plaintiff, therefore he should not be granted summary judgment and he should be held liable for his actions and omissions.

14.

Similarly, Defendants major Lahda and major Sparks failed to act on reports of deliberate indifference. Defendant Lahda blatantly ignored the court orders on the plaintiff's mittimuses. Maclin v Paulson, 627 F.2d 83 (7th cir 1980); Respect for law particularly by officials responsible for the administration of the State Correctional System is in itself a matter of the highest public interest. Duran v Anaya, 642 F. Supp. 510 (D.NM 1986)

  As for defendant Sparks, the plaintiff wrote to defendant Sparks sending a copy of the "physicians orders" page from the plaintiffs medical file, where the signed order for "orthopedic supportive shoes" was written (See Exhibit pages) on February 10, 2001. This order was so clearly written, a nurse wrote a letter to the B-block C.T.O. (Correctional Treatment officer) "Re. M.D. orders for orthopedic supportive shoes from family per custody approval". Defendant Sparks replied to the plaintiff saying "no order has been written" (See Sparks letters - Exhibits). Defendant Sparks knew the shoes purpose was to alleviate some of the plaintiffs pain when he walks, His personal involvement in unnecessarily and wantonly inflicting pain on the plaintiff and participation in violating the plaintiffs Eighth Amendment Rights, Intentionally interfering with Treatment once Prescribed Estelle v. Gamble, 97 S.Ct 285 (1976); Torado v. Ward, 565 F.2d 48 (2d cir 1977) Martinez v. Mancusi, 443 F.2d 921 (2d cir. 1970). The plaintiff was made to further suffer by these administrative officials, wherefore, there is a genuine issue of material fact precluding summary Judgment for defendants major Lahda and major Sparks.