Health Services Administrator Helen Dorsey was contacted numerous times by The plaintiff, many requests and letters and Grievances written were not answered at all. Some of The Plaintiffs Claims and Grievances were dismissed by Defendant Dorsey in a disparaging manner. Toombs v. Bell, 789 F2d 297 (8th cir 1986).

Defendant Helen Dorsey even refused to answer a level 3 grievance written by the Plaintiff. The head nursing supervisor at osborn CI sent defendant Dorsey letters and E-mails requesting The answer to This level 3 Grievance, Helen Dorsey never answered This grievance (see Nursing supervisor Stella Hughes answer Exhibit). Defendant Helen Dorsey was clearly personally involved in The Continuing Deliberate indifference To The Plaintiffs medical needs and should not Be Granted Summary Judgment. (see Exhibits, letters to Dorsey and Grievances) Hill v. marshall, 962 F2d 1209 (6th cir 1992).

6 DEFENDANTS NURSING SUPERVISOR LEDDY, NURSE EVANS AND NURSE DOBSON WERE PERSONALLY INVOLVED IN VIOLATING THE PLAINTIFFS RIGHTS UNDER THE EIGHTH AMENDMENT

Defendants Leddy, Evans and Dobson all were informed and knew first hand of The deliberately indifferent Treatment The Plaintiff was receiving and did not do anything to report or remedy The inhumane Treatment. These defendants all answered requests and/or Grievances written by The Plaintiff Some in a disparaging manner. Toombs v. Bell, 789 F2d 297 (8th cir 1986).

16.

Defendant Roberta Leddy C.H.N.S. (Correctional Head Nursing Supervisor) was fully informed of The plaintiffs situation and was asked To remedy The deliberately indifferent Treatment he was receiving. Defendant Leddy chose To ignore his Complaints and answer his requests and Grievances in a very disparaging manner, dismissing them all. Toombs V. Bell, 789 F.2d 297 (8th cir. 1986); Hill V. Marshall, 962 F.2d 1209 (6th cir 1992). Defendant Roberta Leddy has rejected The plaintiffs Grievances, She has lost one of his Grievances not returning it until he adamantly requested its return (see Exhibits of Leddys Responses). Defendant Leddy even answered The plaintiff on a written request for The Court orders to be respected and honored, by saying "If you wish To submit your legal documents, your C.T.O. will be happy To help you get Them". (see request dated 10/31/00 Exhibit), In addition many requests and letters and grievances went unanswered. Defendant Leddy's Conduct Contributed To The plaintiffs severe suffering and violated The plaintiffs right to be free of cruel and unusual punishment, further Nurse Leddy Told The plaintiff To file This Suit. Defendant Leddys Conduct should preclude her from being granted Summary Judgment, as There is a Genuine issue of material fact.

Similarly Nurses Evans and Dobson were fully aware That The plaintiff was being made to unnecessarily suffer because of deliberate indifference To his serious medical needs and did nothing To remedy his unjust Treatment.

17.

In addition both defendant Evans and Dobson have not responded to many requests and letter to Them. Both Evans and Dobson have answered The Plaintiff with Disparaging answers That did not have anything to do with him at all. Nurse Dobson answered a Grievance the plaintiff wrote referring to a doctor who The Plaintiff was never Seen by and Nurse Evans referred To The Plaintiffs back Problems, The Plaintiff's medical Problem is not his back at all. These defendants failed the Plaintiff when he really needed Them to step up and assert what Violations The Plaintiff was enduring To The administration. This failure Personally Involved Them in The Continuing Violation of The plaintiffs rights Causing him To Further suffer (see requests and/or Grievances Answered by nurse's Evans and Dobson as Exhibits) This Knowledge of The unconstitutional treatment and Their not responding To The plaintiffs plea's for assistance and Them ignoring and dismissing his requests, letters and grievances establishes a Genuine issue of material fact and should Preclude Summary Judgment for defendants Evans and Dobson.

**7. DEFENDANT CORRECTIONAL OFFICER WILLIAM SMITH VIOLATED THE PLAINTIFFS RIGHTS REGARDING MEDICALLY NEEDED DEVICE WITHOUT CHECKING FOR THE PLAINTIFFS NEEDS.**

18.

When The plaintiff was Transferred To Garner CI on February 9, 2000, he was still a pretrial detainee, while being admitted Correctional officer William Smith Took away Two pairs of The Plaintiffs boots with orthopedic inlays (Rucco statement of facts Para 37) The Plaintiff told c/o Smith of His medical need for These boots and how They helped ease some of his pain when he walks. The plaintiff asked Defendant Smith To check with medical or look into his medical records, Defendant Smith Told The Plaintiff in a crude way, he did not care if The Plaintiff had a medical Problem or was in pain, "don't come To Jail", Correctional officer Smith sent The Plaintiffs medically needed orthopedic boots out of The facility. Defendant Smith Contributed To The unnecessary suffering of The Plaintiff with his malicious actions Purposely To make him suffer as Punishment. The Plaintiff being a Pretrial detainee at The time, Defendant Smith violated his right To Due Process under The Fourteenth Amendment, Defendant Smith should not be granted Summary Judgment as a Genuine issue of material fact exists and Smith acted maliciously and should be accountable for his actions. The Plaintiff believes If defendant Smith had checked with medical department before sending The boots out, The whole boot issue would have been avoided and he would have been allowed To Keep his boots

19.

## 8. DEFENDANT MINGZER TUNG VIOLATED THE PLAINTIFF'S RIGHTS REGARDING MEDICAL TREATMENT UNDER THE *EIGHTH* AND FOURTEENTH AMENDMENT, DEFENDANTS GIARRATANA AND WRIGHT VIOLATED THE PLAINTIFF'S RIGHTS REGARDING MEDICAL CARE/ TREATMENT UNDER THE *EIGHTH* AMENDMENT

This case is definately not about an inmate who simply disagrees with the medical treatment he has received from prison physicians or that he believes he has a right to treatment of his choice. This case is about an inmate with serious medical needs who prison physicions treated with deliberate indifference. An inmate who the very people who were trusted with his care and the system have repeatedly egregiously failed. Wellman v. Faulkner, 715 F2d 269 (7th cir. 1983); Todaro V. Ward, 565 F2d 48 (2d cir. 1977); Langley V coughlin, 888 F2d 252 (2d cir. 1989). These egregious failures and Deliberate Indifference caused the Plaintiff to unnecessarily suffer for well over two years when pain relief was readily available. Runnels V Rosendale 499 F2d 733 (9th cir. 1974), pain relief and medical care the plaintiff was receiving at the time of his incarceration, that was interupted and he was denied when he became incarcerated Langley 888 F2d 252 Choosing a easier less efficacious treatment or denying medical treatment which would be available if not incarcerated evidences Deliberate indifference

20.

The plaintiff was first seen by Defendant Tung on February 23, 2000, at this time the plaintiff was a pretrial detainee, he told defendant Tung of his severe pain and briefly about his accident and the different procedures that were tried, the plaintiff told defendant Tung of the medication regimen that controlled his pain. The plaintiff asked Dr. Tung how to go about getting his orthopedic boots back, Defendant Tung gave a cursory look at his foot never touching it or watching him walk. Defendant Tung told the plaintiff he had no medical need for the orthopedic boots he had been wearing for over two and a half years and that four hundred milligrams of motrin four times a day. Defendant Tung violated the plaintiffs Fourteenth Amendment Rights, causing him to suffer and compounding the plaintiffs pain denying him adequate footwear Matzker v Herr, 748 F2d 1142 (7th Cir 1984); Cummings v Roberts, 628 F2d 1065 (8th Cir 1980).

After March 3, 2000 the plaintiff was a sentenced inmate The United States Supreme Court has held that deliberate indifference to the serious medical needs of sentenced inmates constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Estelle v. Gamble, 429 US 97, 97 Sct 285, 50 L Ed. 2d. 251 (1976).

The deliberate indifference standard includes both subjective and objective components, as follows:

21.

First, The alleged deprivation must be, in objective Terms, "sufficiently serious" Hathaway v. Coughlin, 37 F.3d 63 (2d cir 1994). Second The defendant "must act with a sufficiently culpable state of mind" Id. An official acts with the requisite deliberate indifference when The official "Knows of and disregards an excessive risk to inmate health or safety; The official must both be aware of facts from which The inference could be drawn That a substantial risk of harm exists, and he must draw The inference" Farmer v. Brennan, 511 US. 837, 128 L. Ed. 2d 811, 114 SCt. 1970 (1994).

The Plaintiff was seen by defendant Tung many times, each time defendant Tung was clearly deliberately indifferent To his serious medical needs, These needs were clearly outlined by the plaintiffs four private physicians over The Two years and for some eleven months prior to his incarceration. Defendant Tung deliberately deviated from professional standards and was in direct Contrast To everything The plaintiffs documented history declared. Defendant Tung wrote The plaintiff had no medical need for orthopedic boots, he wrote this continuously for Two years, Defendant TUNG signed a order for The plaintiff To get orthopedic boots after Two years of denying he needed Them, like his medical Condition Just reappeared after The Plaintiff suffered and untreated his condition could have deteriorated Koehl v. Dalshein, 85 F3d 86 (2d cir, 1986) Chance V. Armstrong, 143 F3d 698 (2d cir. 1998). Defendant Tung also denied The plaintiff needed a bottom bunk pass expecting him to Climb a ladder with The nerve damage in his foot.

22.

Defendant Tung criticized the plaintiff for complaining of pain, ridiculing him about his past treatments saying he would receive no such treatment, writing libelous entries in his DOC. medical file. Mullen V. Smith, 738 F2d 317 (8th cir. 1994), These unfounded entries effected future care providers from treating him fair.

Defendant Tung would rewrite almost the exact same entry in the plaintiffs file everytime he saw him naming the plaintiffs very painful medical condition, "Post Traumatic polyneuropathy", however, he didn't treat it, although he supplied aspirin its not enough, he willfully refused to treat a know culment. Williams V. Vincent, 508 F2d 541 (2d cir. 1974) Knowing the certian kind of treatment was ineffective, either as a means of toying with him or choosing a easier less efficacious treatment, Kelley V. McGinnis, 899 F2d 612 (7th cir. 1980) Defendant Tung would rewrite that the plaintiff asked for drugs, which in fact the plaintiff never did, didn't ever take what he wrote and didn't know what they are, as a way of libelling him.

Defendant Tung knew the plaintiff had a operation planned which may have permanantly cured his severe pain, Defendant Tung never tried to have this procedure done he continuously let the plaintiff unnecessarily suffer. Delker V. Mapss, 843 F.Supp 1390 (D.or. 1994) Dace V. Solem, 858 F2d 385 (8th cir 1988). This is the same as Defendant Tung did with all the facts regarding the plaintiffs medical history, he disregarded them like they did not exist.

23.

When The plaintiff was first examined by Defendant Wright, Defendant Wright immediately recognized That There was a serious medical problem that was not being addressed. Defendant Wright ordered Pain medication for The Plaintiff, he saw him a few times and in those visits he began Treating The Plaintiff better, he ordered a bottom bunk Pass, he ordered orthopedic boots, although he denies it now To Protect Defendant Tung The plaintiffs medical file is undeniable. However, when defendant Tung saw That Defendant Wright had ordered Opiod Pain medication, Defendant Tung Cancelled That medication order, Interfering with Treatment once Prescribed has Been Specifically Singled out by The supreme court. Estelle 97 sct 285. (See exhibit of Tung cancelling wrights orders) AT This Time DR. Tung Prohibited Defendant Wright from ordering narcotic medications for The Plaintiff, Defendant Wright was furious with defendant Tungs interference. That is when defendant Wright requested a URC (utilization review committee) Consult, he said he needed another doctor to recommend Pain medication so "he would have a leg to stand on against DR. Tung" The URC request was denied, so defendant Wright Kept submitting requests until He finally made a few Phone Calls and got a Consultation approved. The Plaintiffs medical records demonstrate That defendant Wright clearly Knew There was a serious medical need and because of Defendant Tungs interference he would have To go over ride him so The Plaintiff would get adequate Treatment for his serious needs.

24.

The Plaintiff, on February 26, 2002, finally went to the consultation defendant Wright requested. He was thouroughly examined by DR. Fedus, DR. Fedus explained to the Plaintiff that this consultation was for recommendations only he could not order Treatment. DR. Fedus recommended that the Plaintiff get orthopedic inlays, orthopedic boots, he also recommended the use of opiod pain medication, declaring that the use of the medication and the orthopedic boot together will allow the Plaintiff to function in population with minimal symptoms. The Plaintiff had both the boots and medication when he came into D.O.C. custody and both were taken away, defendant Tung said He had no medical need for either. DR. Fedus also told the Plaintiff of a nerve cap operation which would sever the nerves and put plastic caps on them, however the Plaintiffs private physicians had advised against operating on his foot and were worried about the diffuse nature of the nerve damage so His physicians were working on the nerve path from his spinal area. (see Exhibit DR. Fedus recommendations) The Plaintiff was not ordered anything or offered Any procedures by doctor Fedus.

When the Plaintiff returned with DR. Fedus' recommendations defendant Tung who denied the Plaintiff needed orthopedic boots for two years, ordered them. Defendant Tung refused to follow the recommendation for pain medication continuing to make the Plaintiff unnecessarily suffer even though clear recommendations that took over two years to get were made.

25.

Prison officials may not shop around until They get a medical opinion That suits Them, Hamilton V. Endell, 981 F2d 1063 (9ᵗʰ cir. 1992).

The Plaintiff would again like to Point out The blatant subterfuge tactics being used and how defendant wright is lying to the court in his affidavit, To Protect Defendant Tung. Defendant Wright States The Plaintiff's medical condition did not warrent the use of opiod medication and he and defendant Tung made This conclusion after The Plaintiff saw DR. Fedus (wright affidavit Para 24-25) The fact is Defendant wright Pushed for This consultation so he could override Defendant Tung and Prescribe opiod medication again for The Plaintiff. As soon as Defendant wright looked at DR. Fedus' recommendations he stated he now had a leg to Stand on and he immediately ordered opiod medication for The Plaintiff, This was April 19, 2002 (see Exhibits of wrights order) Proving he is lying and his affidavit was made in bad faith to Protect DR. Tung. Defendant wright was transferred and The Plaintiff did not see him again.

That is when defendant Giarratana took his place. The Plaintiff was seen by defendant Giarratana who had already been dictated to by defendant Tung about Plaintiff Defendant Giarratana never even gave a cursory look at The foot of The Plaintiff he was Told Defendant Giarratana would review his medical records and make a decision.

26.

Defendant Giarratana could not have done a complete review of The Plaintiffs medical file, as his affidavit states, because The Plaintiffs medical records clearly show a serious medical need and The need for Pain management. Defendant Giarratana wrote a order for The Plaintiff to take Twelve Tylenol a day That is outrageous Three thousand nine hundred milligrams of Tylenol a day is bad for your body, That is not a Physicians best Judgment at all.

The second circuit has identified factors relevant to an inquiry whether a medical condition is a serious on. These include but are not limited to, "The existence of an injury that a reasonable doctor or patient would find important and worthy of Comment or Treatment; The presence of a medical condition That significantly affects an individual's daily activities; or The existence of Chronic and substantial Pain". Chance v. Armstrong, 143 F3d 698 (2d cir. 1998). It would be impossible to argue that The Plaintiffs nerve damaged foot would not be found to be worthy of Comment or treatment by a reasonable doctor or Patient, Considering it already has been by every doctor even defendant Tung. Having Constant Severe Shooting Pain in your foot That is increased Tenfold when The Plaintiff walks and he goes out of his way To avoid stairs demonstrates The Significant effects the Plaintiffs medical Condition has on his daily activities. Certianly, no one Could characterize such a Condition as "Trivial or insignificant".

27.

In regard to The objective component of deliberate indifference, it is unquestioned That DR. Tung, DR. Wright and most of The other named defendants were aware of The Plaintiffs Serious medical needs. Defendant Tung submitted a request To U.R.C. himself on May 8, 2000, which was denied, however, That was all defendant Tung did as far as U.R.C. requests. Defendant Tung did order opiod pain medication one time for The plaintiff's foot on November 28, 2000, again evidencing The plaintiffs Serious medical needs and severe pain. Defendant Wright submitted U.R.C. requests and made calls until The plaintiff was finally approved because The plaintiff was suffering and it is impossible To measure The risk or know How much damage was done by Defendant Tung denying The plaintiff a medically adequate orthopedic boot for That two years.

There is a genuine issue of material fact and summary Judgment should not be granted for defendants Tung, Wright and Giarratana as They violated The plaintiffs rights by acting deliberately indifferent To his serious medical needs.

The defendants are really focusing on The records of The plaintiffs last physician DR. Sood, however, They are misrepresenting The facts when it comes to The plaintiffs private medical records. In Their memorandum They have Quoted a part of DR. Soods note from July 7, 1999 and added emphasis To The words "In The Interim" as a way To mislead,

28

When in fact every month Dr. Soods notes say the words "In the interim" That is the way that Dr. Sood writes (See Defendants memorandum pg 8) further also on pg. 8 of their memorandum, How do the defendants know what Dr. Soods intentions were, saying he had no intention of keeping the Plaintiff on narcotic medication for long periods of time, That is very notional and inaccurate, seeing that the Plaintiff had been on the same narcotic medication for almost three years at the time he was incarcerated. The Plaintiff would not need to continue to take the narcotic medication if the planned surgical procedure cured his pain permanently and both he and Dr. Sood were very hopeful of that. (See Exhibit of Dr. Soods records) The Plaintiff finds it very preposterous That the defense has not included or mentioned the over two years of other doctors medical records showing all the procedures the Plaintiff tried to permanently cure his pain and that clearly show he had been on the same type of medication since the day of his injury continuously. Instead they try to mislead and misrepresent facts, use subterfuge tactics and outright lie in affidavits. (See all exhibits of entire medical history.)

It is not just coincidence that after enduring the deliberate indifference of defendant Tong, he has almost the exact medication regimen back in place and orthopedic boots, a bottom bunk and bottom Tier pass (No stairs) and he is still in D.O.C custody.

29.

This is not simply doctors That disagreed, DR. Tung Cancelled another doctors orders for pain medication and he Prohibited Two doctors from using There own Judgment That is Deliberate Indifference and a violation of his rights DR. Tung Deliberately Caused The plaintiff To unecessarily suffer.

## 9. AMERICANS WITH DISABILITIES ACT

The defendants did not accomodate for his Know disability The plaintiff filed Grievances That were not returned, Grievances That were lost, Grievances That were denied. He exhausted his administrative Remedies more than once, The Administrators should honor Their own directives and answer The Grievances written by inmates. The plaintiff meets The requirements of This Act he has not been able To participate in Programs and activities, He was in a facility for over Two years That He struggled in agony to climb stairs so He could eat and stay alive when something a simple as a boot would have helped with some of his pain and he was discriminated against he was not allowed in The Gym at all because of his foot and shoes further He could not Participate in any outdoor activities.

The plaintiff meets all The ADA requirments and summary Judment should not be granted, as he did everything required of him To exhaust his administrative remedies

30.

## 10. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE CONSTITUTIONAL RIGHT TO REASONABLY ADEQUATE MEDICAL CARE WAS CLEARLY ESTABLISHED

"Qualified immunity is the doctrine that shields government officials performing discretionary functions from being held liable for civil damages arising from their actions which do not violate clearly established statutory or constitutional rights of which a reasonable person would have known'". P.C. V. McLaughlin, 913 F.2d at 1039, quoting Harlow V. Fitzgerald, 457 U.S. at 818. The defendants argue They are entitled To qualified immunity because They do not believe The plaintiff suffered The deprivation of any Constitutional or federally protected right and That none of The defendants would have Known Their actions were unlawful. (Defendants memorandum, Page 13)

The deliberate indifference standard in cases involving The medical care inmates received was established in ESTELLE, a case decided nearly twenty years before the actions That gave rise to the instant suit. If The defendants argument is meant to imply They Know of no published Case in which it has been held That Taking away Known needed orthopedic boots and medication, claiming they are not medically needed, Then after Two years They are needed again when The Inmates needs were The same The entire time and failure To approve The Surgical procedure planned prior To his incarceration Can Constitute Deliberate indifference, Their search for such a case is misplaced.

31.

The second circuit has stated that two principles should guide the analysis regarding whether a constitutional right has been clearly established." First, in ascertaining whether the right was clearly established with respect to a given situation, a court must consider 'not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the government actors] position should have known' about the appropriateness of his conduct under federal law." Johnson v Newburgh Enlarged School District, 239 F.3d 246, 251 (2d cir 2001), quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d cir. 1998). The Court went on to say the following:

Second, the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established. Indeed, it stands to reason that in many instances "the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with" the well recognized application of the right at issue on the part of government actors. Johnson F.3d at 251. (internal citations omitted)

This constitutional right was clearly established at the time of the instant case. That the defendants are not entitled to qualified immunity. The plaintiffs rights were continuously violated by the defendants in many ways precluding this defense.

32.

## 11. THE DEFENDANTS ARE NOT ENTITLED TO IMMUNITY

The Plaintiff has invoked Supplemental Jurisdiction pursuant to 28 USC § 1367(a), The federal court may also hear state law claims arising from the same facts. The state law claims against individual state officials in their individual capacity is permitted under Pennhurst State School and Hospital V. Halderman, 465 US. 89, 121, 104 S.Ct 900 (1984); Deakins V. Monaghan, 484 US. 193, 203-04, 108 S.Ct 523 (1983); Kirwin V. New York office of mental Health, 665 F.Supp 1034 (E.D. N.Y. 1987); Balabin V. Scully, 606 F.Supp. 176, 184 (S.D. N.Y. 1985) (conversion claim could be heard). Therefore, the court has the option as to whether it would like to hear these claims, these claims should only be dismissed if the court does not want to assume jurisdiction.

## 12. DEFENDANTS ARE SUED IN THEIR INDIVIDUAL CAPACITY FOR MONEY DAMAGES AND OFFICIAL CAPACITY FOR ANY OTHER RELIEF, INCLUDING INJUNCTIVE

The Plaintiff names the defendants in both their individual and official capacities, however, the court will determine that injunctive relief is sought as well as money damages. Prison officials are not protected by the Eleventh Amendment when they are sued in their individual capacity even though they were acting in their official capacity. Hafer V. Melo, 112 S.Ct. 358, 364-65 (1991); Farid V. Smith, 850 F.2d 917, 921 (2d cir 1988).

33.

## 13. THE PLAINTIFF SATISFIED THE REQUIREMENTS FOR EXHAUSTING HIS ADMINISTRATIVE REMEDIES

The plaintiff has satisfied the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. The plaintiff filed numerous grievances that went unanswered. The plaintiff has filed grievances that were lost or destroyed. Grievances filed by the plaintiff have been rejected, denied, and compromised. He has been told that more than one of his grievances could not be appealed to the next level. The Supreme Court has also held that inmates must exhaust administrative remedies regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 US. 731, 741 (2001)

The Connecticut Department of Correction has established a grievance process set forth in Administrative Directive 9.6 entitled Inmate grievances, which sets forth a specific procedure that inmates must follow when submitting grievances. The problem is that prison administrators do not follow their own Administrative Directives, not responding to grievances, losing and destroying them is not unusual.

The plaintiff had a Head Nursing Supervisor at Osborn CI, Sheila Hughes try to get a answer from Health Services Administrator Helen Dorsey at Garner. Nurse Hughes wrote to and E-mailed Helen Dorsey requesting a response to the plaintiffs level 3 Grievance.

34.

The Letters and E-mails went unanswered, Sheila Hughes Then called and left a message, sent another letter and Email when These Too went unanswered mrs. Hughes Informed me I was not going to get a answer to this grievance (see Exhibits grievance and correspondences with Sheila Hughes C.Hns.). The Plaintiff fulfilled his requirements He cannot control if Prison administrators do not respond To Grievances Letters and Inmate request forms That are written. This Frequently happens with complaints about officials and medical issues. Thus, The Plaintiff did everything required of him To exhaust his administrative remedys including The grievance Procedure. The Prison Administrators whom Grievances were written about Chose To Ignore Their own rules Trying to Sabotage What The inevitable outcome was, This Suit. (See All Letters requests and Grievances Exhibits).

## 14. THERE IS A GENUINE ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGMENT FOR ALL NAMED DEFENDANTS ON ALL ISSUES RAISED

The Plaintiff filed This 1983 action against The defendant Prison officials who clearly Had Personal involvement in his Prolonged unnecessary Suffering.

35.

Each named defendant Treated The Plaintiff with Malice, acting with deliberate indifference To His Serious Medical needs. The deplorable Treatment he was given was so bad it amounted To no Care at all. The actions of The defendants Clearly violated The rights of The Plaintiff Secured by The United States Constitution.

_Dustin Ruocco_
DUSTIN RUOCCO
Plaintiff

## CERTIFICATION

I hereby certify That a Copy of The foregoing was mailed To The following on This 17th day of FEBRUARY 2004:

Michael J Lanoue
ASSISTANT Attorney General
110 Sherman Street
Hartford, CT 06105

_Dustin Ruocco_
DUSTIN RUOCCO
Plaintiff

36.