DUSTIN RUOCCO                :    CIVIL NO. 3:02CV1443 (DJS)(TPS)
       V.                    :
DR. MINGZER TUNG, ET AL      :    JUNE 1, 2004

## MOTION FOR A TEMPORARY RESTRAINING ORDER

The plaintiff respectfully requests that this Court issue a temporary restraining order pursuant to Rule 65(b) Fed. R. Civ. P., while waiting for a ruling on his motion for preliminary injunction, which immediately orders the Defendants, their successors in office, agents and employees and all other persons in active concert and participation with them to re-start and now provide the plaintiff with the exact analgesic medication regimen the plaintiff was taking prior to and at the time of his incarceration which was: Oxycontin 40mg T.i.d. (THREE TIMES A DAY) - AROUND THE CLOCK PAIN MANAGEMENT, Percocet Two Tablets T.i.d. (THREE TIMES A DAY) - BREAKTHROUGH PAIN, AND NEURONTIN 300mg T.i.d. (THREE TIMES A DAY) - ANTICONVULSIVE NEUROPATHIC MEDICATION for the following reasons:

1. By the time the defendants got 2 or 3 extensions of time, they had obviously conceded that the plaintiff does need around the clock pain management, thus responding that they were providing medications comparable to what the plaintiff was receiving prior to his incarceration making the claim moot. By the end of march, 2003 the plaintiff was even re-started on NEURONTIN, he was being given: Oxycontin 40mg B.i.d. (TWO TIMES A DAY) in place of three times, Tylenol #3 Two Tablets T.i.d (THREE TIMES A DAY) substituted for Percocet Two Tablets T.i.d. (THREE TIMES A DAY) - This was not an adequate substitute for the plaintiffs breakthrough pain, and neurontin 300mg T.i.d (THREE TIMES A DAY) Anticonvulsive neuropathic medication.

which is the same as his private physician started him on in January, 1999, in addition to the around the clock opiod pain medication regimen.

At the end of November Dr. Pillai who had been responsible for re-ordering the plaintiffs medications, informed the plaintiff that he was stopping and not reordering Neurontin 300mg T.i.d. this medication had been put on the D.O.C. non-formulary list and being that this medication was not manditory for the Plaintiffs pain control it would not effect his pain level. The Plaintiff did not object as his pain would not increase, (see order 11/25/03 DOC medical file of Plaintiff). Every few months Dr. Pillai would check the plaintiff, ask if he was ok. and re-order his medications, with these medications the plaintiff was walking better, although not great and his pain for the most part was tolerable, neither was really comparable to at the time of his incarceration but by not walking to the chowhall or going to Recreation he managed. In mid April, 2004 Dr. Pillai re-ordered the Plaintiffs pain medications till mid July, The plaintiff had been back on the pain medication for about 18 months, his weight was back down and his left leg and ankle (his good leg) were not bothering him nearly as much as before his medications were restarted and they were suffering continuous damage and abuse, from bearing all his weight, which he is being made to do again.

On friday may 7, 2004 the Plaintiffs longstanding around the clock medication regimen was abruptly changed, without an examination or notice to Morphine Sulfate 20mg T.i.d. (three times a day) This medication only lasts 4 to 6 hours, he was waiting 8 and 12 hours between doses. given like this the plaintiffs suffering was inevitable, it was not for around the clock management, The plaintiff suffered severely and was ill through the weekend.

2

Monday May 10, 2004 The Plaintiff filed a emergency medical grievance. At 5PM 5-7-04 The plaintiff's medication was given to him & he was put on a 50 μg/h (microgram/hour) Fentanyl Patch - This was an around the clock pain management medication however it was only equivalent to half of what The Plaintiff had been taking for the past 18 months. He was taking 40mg of oxycontin every 12 hours, he should have been given 100 μg/h (micrograms/hour) (see fact sheet, oxycontin) but was not. Immediately The Plaintiff was purposely Transferred to Webster CI a facility they knew he could not be housed at on that medication. And a Defendant in this case Dr. Giarrantana is the doctor at Webster CI and had called and written remarks Doctor to Doctor, The Plaintiff was sent back to Osborn CI the next day May 11, 2004.

Tuesday May 11, 2004 back at Osborn the Plaintiff requested fair accommodations for his handicap, which he had when he left the day before; he needed a bottom bunk bottom tier, no stairs and handicap handrails + seat in the shower - There is a medical dormatory, That is where he was housed before he left. He was refused those accommodations. With his medication Decreased by Fifty Percent he can barely walk and can put almost no weight on his right foot. The Plaintiff was put in segregation on 5/11/04 Today is 5/30/04 he is still there he has been denied approval for the only place with a handicap handrail, shower DMR for him to live in Population further already his left leg and ankle are bothering him. He wrote daily requests to see the doctor, correct his medication and he has written many unanswered medical grievances.

Around May 19 or 20, 2004 DMR The Plaintiff was taken to see Dr. Pillai, when he sat down he noticed in Dr. Pillai's "IN" box a memo referring to the Plaintiff, Dr. Tung and other defendants in this case. When Dr. Pillai noticed what I was looking at he quickly moved the memo to inside his desk.

3

DR. Pillai examined the plaintiff, but for a diagnosis that served his purpose. The Plaintiff could barely walk and was in severe pain and overall was not feeling well. DR. Pillai dismissed the Plaintiff. DR. Pillai called for the Plaintiff again on May 28, 2004 and even though his medication orders were valid until around June 10, 2004 DR. Pillai informed the Plaintiff he was reducing the Fentanyl Patch from 50µg/h to 25µg/h (micrograms/hour) for 15 days then stopping it all together even though the Plaintiff is in severe pain constantly and can barely walk, at all. DR. Pillai started a Anticonvulsive neuropathic medication, Tegratol, it is like the neurontin he told me was not mandatory on November 25, 2003 (See Attached from file). When the neurontin was stopped the Plaintiff's pain did not get worse, when this new medication Tegratol started the Plaintiff's pain did not get any better at all.

The Plaintiff asked DR. Pillai if they were going to immediately do the spinal cord stimulation operation the Plaintiff had planned prior to his incarceration DR. Pillai said can do it when I am released.

This sudden tainted diagnosis from DR. Pillai seems to have ulterior motives other than the Plaintiff's best interest because his painful symptoms have only gotten worse as the nerves are growing outside the nerve sheaths causing more sensitivity. The D.O.C. Specialty Consult even wrote about how the nerve sheaths are crushed flairing of the nerve endings and excessive Dendrites (see URC findings). The Plaintiff needs to be on this type of medication until he is released and he can get himself surgically repaired. To put him through the severe pain and adverse symptoms of stopping this medication is uncalled for and unjustified He did nothing wrong.

4

The plaintiff respectfully request This court issue a Temporary Restraining order, ordering That The medication regimen he was on at The time of his incarceration be immediately re-started and continue through the ruling and decision on the Plaintiffs motion for preliminary injunction, as he is being made to unnecessarily suffer again

WHEREFORE, The plaintiff respectfully requests his motion for a Temporary Restraining order be granted and he requests This relief without requiring him to Post Security

*Dustin Ruocco*
DUSTIN RUOCCO
- Plaintiff -