DUSTIN RUOCCO           : CIVIL NO. 3:02CV1443(DJS)(TPS)
    V.                  :
DR. MINGZER TUNG, et al : JUNE 1, 2004

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER

BACKGROUND,

    The Plaintiff brings this Civil Rights action claiming the defendants have been deliberately indifferent to his serious medical needs. The Plaintiff severely crushed his right forefoot + Toes in a work accident. He had numerous medical procedures done, including lumbar sympathetic blocks in his spinal area twice, in attempts to ease his constant severe pain. In addition, he was on the same forms of pain medication from the day of this unfortunate accident to the day he was incarcerated. The plaintiffs medical records from his private doctor's clearly indicate a certian level of pain management is necessary to prevent suffering and allow him to walk at a more normal rate. Further, he and his last treating Physician had plans to carry-out a surgical procedure, a spinal cord stimulator in the near future, that was the next planned step in his medical treatment, at that point he was incarcerated and his medical care was abruptly stopped.

    His medical care as far as pain management was resumed in the end of 2002 for the last 18 months has O.K. not great but O.K. His pain management has abruptly stopped and he is being given medications which do-not compare to what they are substitutes for, they do not relieve his severe pain and they make him sick, he is being used as a Guinea pig, and being put at risk of serious injury

1

ARGUMENT;

The plaintiff filed his claim along with a motion for a Temporary Restraining order and a Preliminary injunction. As soon as this was filed The Plaintiff was suddenly called to The doctor and he was re-started on OXYCONTIN, forty five days later he was called back to The doctor and his medication was raised to The exact dose he was on at The time of his incarceration except he was given it Two Times a day in place of Three Times a day, and he was given Tylenol #3 in Place of Percocet Two Tablets Three Times a day This doesn't really make sense because, Tylenol #3 The active drug is Codiene. Percocet Has The same active drug as oxycontin, which is oxycodone. So to use Tylenol #3 for Breakthrough pain instead of Percocet Has Very little ability to work to boost The main medication because it is so much weaker. He was on Oxycontin 40mg Bid (Twice a day) And Tylenol #3 Two tablets (Three times a day) This was in December 2002 in march 2003 They added Neurontin 300mg Tid (Three Times a day) which is a Anticonvulsive Neuropathic medication. The Plaintiff went to see Dr. Pillai in November 2003 Dr. Pillai Discontinued The Neurontin 300 mg Tid (Three Times a day) he said The Anticonvulsive neuropathic medication was not mandatory for the pain control. He was right not really a differece. The Narcotic pain medications were renewed every 2 or 3 months by Dr. Pillai The plaintiff was doing fine he was on These medications for 18 months. He was able to walk somewhat better as long as he limited his activities and he lost almost all of The 50 Pounds he had gained not being able to walk. He was able to sleep some at night and just overall was able to Tolerate The Pain.

2

ARGUMENT CONT.

On May 7, 2004 a nurse told the plaintiff his medication had been changed. This was done without a examination or telling him. That was a friday. On saturday night May 8, 2004 the plaintiff was given his first dose of this substituted medication it was morphine sulfate 20mg within 2 hours he was in more pain than usual by 2AM he was in severe pain and by 5AM he was not only in severe pain but was having adverse symptoms from not being given a long acting around the clock medication. Sunday May 9, 2004 was also a long uncomfortable and painful day. Monday May 10, 2004 the plaintiff wrote a emergency medical grievance outlining the inadequacies of the substituted medication. At 5PM Monday May 10, 2004 the plaintiff was called to medical and a long acting medication was substituted he was given a 50μg/h (microgram/Hour) Fentanyl patch and he was transferred immediately to Webster CI. There was two problems first 50μg/h of Fentanyl is only half the equivilent of 40mg oxycontin every 12 hours he should have had 100μg/h (*see oxycontin fact sheet/conversion*) second, everyone knew the plaintiff could not be housed at Webster CI. because of the type of medication. The plaintiff was having much more pain than usual with only half his usual dose of pain medication and having to move made it worse. Tuesday May 11, 2004 when the plaintiff got back to Osborn CI. he immediately requested fair accommodations, which he had one day prior when he was transferred, his condition actually had worsened with him having much more pain he wasn't walking quite as good as usual so he still needed, a bottom bunk, bottom tier, no stairs and Handicap Handrails in the shower, before he was transferred he was in the medical dormatory which is the only place in the facility with a shower like that in the unit.

3

ARGUMENT CONT,

The Plaintiff was refused these fair accommodations for his handicap by CHNS P. Wollenhaupt, who was paged by the intake nurse. This was clear deliberate indifference. ESTELLE V. GAMBLE 97 S.CT 285, MARTINEZ V. MANCUSI 443 F.2d 921 2nd cir 1970. The Plaintiff believes CHNS P. Wollenhaupt should be added as a defendent pursuant to Rule 20 Fed.R.Civ.P. After being denied fair accomodations the Plaintiff was brought to segregation where he has been forced to continue to refuse housing because he can barely walk and is in severe pain and he is being denied fair accomodations. The Plaintiff wrote daily requests from segregation to be seen by the doctor in addition to numerous unanswered grievances. Finally, about may 19 or 20 the Plaintiff was brought to see DR. Pillai when he got into DR. Pillai's office he noticed a memo in DR. Pillai's "In" Box with his name and the names of a few of his defendants as well as DR. Giarrantana who was the Doctor at Webster CI which he went to on may 10, 2004 as soon as DR. Pillai started noticing what he was looking at, he quickly moved that memo to inside his desk DR. Pillai gave the patient a quick examination, he had already cut his medication in half, over a week ago, This examination seems to have been done to serve his purpose. The Plaintiff was dismissed from his office. The Plaintiff again wrote about his serious pain and DR. Pillai saw that he could barely put any weight on his right foot and it was extremely sensitive. On Friday may 28, 2004 the Plaintiff was given his requested appointment, he again saw DR. Pillai, DR. Pillai said he was cutting the Fentanyl patch from 50 µg/h to 25 µg/h for 15 days then stopping it all together the Plaintiff would not be getting a substitute medication, with that memo and seeing that DR. Giarrantana was at Webster there were ulterior motives behind this.

4

DR. Pillai said he was going to start a ANTICONVULSIVE NEUROPATHIC MEDICATION Tegratol, he had told the Plaintiff November 2003 That that Type of medication wasn't mandatory. The Plaintiff's Private Physician put him on Neurontin in addition To The Pain medication Not in place of it. The Plaintiff started Taking This TEGRATOL on May 28, 2004 At about 8 PM. he has since been constantly sick to his stomach, lightheaded its been hard To concentrate for him, he's been getting headaches and occasionally a mild Pain in his chest. The Plaintiff believes that after knowing what the Plaintiff's medical needs are and after 18 months of making sure he got It To suddenly change for no Reason without a examination is blatant Deliberate indifference and even Though DR. Pillai is still Prescribing Tylenol #3 He knows it is not nearly enough for The Plaintiffs Severe and Constant Pain and Pursuant To Rule 20 Fed. R. Civ. P. DR. Pillai should be added as a defendant. WILLIAMS V. Vincent, 508 F.2d 541, (2nd Cir 1974); ESTELLE V. GAMBLE, 97 S.CT 285; TOMARKIN V. WARD, 534 F.Supp 1224 (SDNY. 1982).

CHNS. Wollenhaupt AND DR. OMPREKASH Pillai Have Acted with Deliberate Indifference To The Plaintiffs Known Medical Needs and abruptly interfered with his long-standing Pain medication regimen for no known reason The Plaintiffs medication orders were written Through mid July and all of a sudden The Plaintiff is made a scapegoat. A few months ago A Nurse got caught Stealing The narcotic medication and was fired, Two other nurses Suspended and There Problems internally have nothing To do with The Plaintiff. If He did anything wrong He would Have been given a Ticket and he would not be addressing This injustice with This Court But He Didn't

5

CONCLUSION;

The plaintiff respectfully requests This Court issue This Temporary Restraining order, while waiting for a ruling/decision on his motion for a Preliminary injunction, as The combination of These Two motions if granted will ensure he is not Subjected to further unnecessary suffering and deliberate medical mistreatment as well as risking his health by putting him on new medications when what works is very well documented. Further, his left leg (Good leg) and ankle are again taking a beating by being made to hold all his weight all The time, causing unnecessary Damage. WHEREFORE, IT is respectfully requested This Court grant This motion until a ruling on his motion for Preliminary injunctive relief.

Should This motion be granted please Immediately inform ms. Patty Wollenhaupt CHNS. and Dr. Omprekash Pillai at Osborn C.I.

Dustin Ruocco
DUSTIN RUOCCO
Plaintiff

6