DUSTIN RUOCCO                :   CIVIL NO. 3:02 CV 1443 (DJS)(TPS)
       V.                    :
DR. MINGZER TUNG, et al.     :

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS MOTION FOR A PRELIMINARY INJUNCTION

BACKGROUND;

The Plaintiff (Ruocco) brings this civil rights action claiming the defendants have been deliberately indifferent to his serious medical needs. The Plaintiff sustained a severe crush injury to his right foot in a work accident. He had numerous medical procedures done including lumbar sympathetic blocks in his spinal area twice in attempts to ease his constant serious pain. In addition he was on the same forms of pain medications from the day of this unfortunate accident to the day he was incarcerated. The plaintiff's medical records from all four of his private doctors, all specialists, clearly indicate that a certian level of pain medication/management is necessary to prevent suffering and allow him to walk at a more normal rate. Further, these records showed he and his last treating physician had plans to carry-out a surgical procedure, a spinal cord stimulator in the near future as the next planned step at this point he was incarcerated and his medical care was abruptly stopped.

(Continued on page 2)

## STANDARD OF REVIEW

The court has stated that the standard for injunctive relief is well established in this Circuit and to warrant a preliminary injunction as relief the moving party "must demonstrate (1) That it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000)

In this matter it is absolutely clear that the plaintiff is now again suffering actual irreparable damage to both his good ankle and leg as well as his injured foot if this injunction is not issued. Further it is also clear that the plaintiff is the only person who is suffering a hardship in this matter, he has already survived summary judgment.

## FACTS

The plaintiff filed his claim around mid September 2002, with his claim he filed a motion for preliminary injunctive relief. He requested to be put back on the medication regimen he was on prior to his incarceration, which was for long-term around the clock severe pain management. The medications were: Oxycontin 40 mg - Tid (Three Times a day) for around the clock management, Percocet Two Tablets - Tid (Three Times a day) Breakthrough Pain Control, Neurontin 300 mg - Tid (Three times a day) Anticonvulsive Neuropathic medication.

(Continued on PAGE 3)

FACTS CONT.

The Plaintiff was seen by the doctor on November 16, 2002, The defendants knew he had asked The Court to intervene and that the U.R.C. (utilization review committee) Doctor concurred that opoid pain medication should be used. At the doctors visit the Plaintiff was immediately put back on oxycontin 20 mg Bid (twice a day) and Tylenol #3 (tylenol with codiene) Two Tablets Tid (three times a day) in place of the Percocet. The Plaintiff was called back to the doctor on December 27, 2002, at which time the doctor increased the oxycontin

FACTS CONT.

The Plaintiff was seen by the doctor on November 16, 2002, The defendants knew he had asked the court to intervene and that the U.R.C. (utilization review committee) Doctor concurred that opoid pain medication should be used. At the doctors visit the Plaintiff was immediately put back on oxycontin 20 mg Bid (twice a day) and Tylenol #3 (Tylenol with codiene) Two Tablets Tid (Three Times a day) in place of the Percocet. The Plaintiff was called back to the doctor on December 27, 2002, at which time the doctor increased the oxycontin to 40 mg Bid (Twice a day) and the Tylenol #3 stayed the same.

The Plaintiff's initial motion was denied for what he believes were several deceptive fallacies used as a blatant subterfuge. The Plaintiff quickly filed a motion for reconsideration, requesting the medications and for his left ankle and leg (his good leg) to be looked at, by a specialist. Just the fact that the defendants suddenly reinstated almost the exact regimen he was on prior to his incarceration is quite ironic, it not only shows he should have been on it the entire time, but also it shows that they would only give him what his condition requires by the motivation that the Plaintiff asked the court to use its injunctive power. Further, in march of 2002 they decided to re-start the Plaintiff on his Neuropathic medication Neurontin 300 mg Tid (Three times a day).

(Continued on page 4)

FACTS CONT.

The defendants submitted a "DETAILED SUMMARY OF MEDICAL CONDITION/TREATMENT" of The Plaintiff in Their response To my motion, They stated The Plaintiff is currently prescribed "Oxycontin" and "Tylenol #3" and that is comparable to his Pre incarceration medications. They stated The liver function Tests were ordered, and They ordered a X-RAY for The damage to my left Ankle, AN X-RAY would NOT show The Kind of damage done To my Ankle, AS There is no Broken bone it is Snapping, Grinding and Popping - Bone on Bone.

The Court Stated in its April 24, 2003 ruling that because The Plaintiff Concedes he is receiving (most of) The requested/required medication and He Can Provide No Evidence That the medication would be discontinued before The Conclusion of this action the request was moot.

The way The Plaintiff understood The response from The defendants was That this was a agreement through The Court That The medications would stay the way They were. However, this did not happen in late November 2002 They refused To re-new The Neuropathic medication "Neurontin" stating That due to The cost it has become a "NON FORMULARY" drug and That They would Not be reordering it, They also Provided no Substitute.

(Continued on PAGE 5)

FACTS CONT:

This medication was not a primary source of pain control like the others so the plaintiff was in no more pain by not having it so instead of causing problems he let it go. The plaintiff went about every (3) three months to see DR. Pillai who would re-new his pain medication orders for oxycontin 40mg Bid and Tylenol #3 Two Tabs Tid. This went on for over a year.

The plaintiff was doing pretty good most of the time he still limited his walking to only what is necessary, he has never went to the gym, library, or outside for recreation. The plaintiff would only walk to the chow hall to eat 2 or 3 times a month, he would feed himself with food from the commissary, he has been doing this for over (18) eighteen months and still does. The plaintiff was grateful for what pain relief he was getting and he could always get a few hours sleep at night. The plaintiff was not pain free by any stretch of the imagination but compared to the pain he was in before he was re-started on his medication he could tolerate the pain if he limited his activities as he did. If he was on the exact regimen he was on prior to his being incarcerated he could definately do more walking maybe to the chow hall or outside but what he had was working for him. He always had to tape his foot up to inhibit any movement the boot allowed.

(Continued on page 6)

PAGE 6 of 10

## FACTS CONT.

On Friday May 7, 2004 The Plaintiff went to get a new roll of tape and his night medication. The nurse asked me why they changed my medication orders. I Thought it was a Joke my medication orders were Just renewed and were good until mid July. The order was changed from oxycontin 40mg Bid To Morphine Sulfate 20mg Tid. The Plaintiff had no idea why This was done, being The weekend There was nobody to explain, he knew he didn't do Anything wrong so he waited.

On Saturday night May 8, 2004 about 8PM he was given The first dose of This new medication by 10PM he was having much more pain Than usual, by 2AM May 9, 2004 he was in serious pain and Could no longer sleep, by 5AM May 9, 2004 he was in excruciating pain, which he hasn't felt in over a year and a half, and he was having adverse symptoms from not being given a around The clock long acting medication. Come To find out morphine sulfate liquid is a 4 to 6 hour maximum medication, he was made To wait 8 and 12 Hours between doses, second, The 20mg dosage wasn't even close to being equal To The strength of 40mg of oxycontin he had been Taking for so long. There wasn't anybody who could do Anything he suffered Through Sunday.

(Continued on page 7)

## FACT CONT.

The Plaintiff had been prepared for this he had brought a copy of the drug facts/product information (attached) from Purdue Pharm, L.P. The maker of oxycontin. He showed it to CHNS. Wollenhaupt where it had the conversion ratio for the fentanyl patch, he showed how for every 10mg q 12h of oxycontin was = to $25 \mu g/h$ of Fentanyl. Seeing that He was on 40mg of oxycontin the patch should be $100 \mu g/h$ NOT 50 which is what she had put on him, He was already suffering now they have cut his medication in half; he is a opiate tolerant patient he has been on oxycontin 40mg Bid for over 1½ years. CHNS Wollenhaupt knew he was going to be hurting bad and she also knew He could not be Housed at Webster CI and This Transfer was vindictive reprisal for writing The emergency medical grievance and for letting it be known how The Plaintiff was in Severe Pain and ill for no reason at all because of Their actions.

The Plaintiff was sent to Webster CI Monday May 10, 2004 When He got there He was told, as He knew, he would be leaving, he could not be there on that medication. The Plaintiff was sent directly back to Osborn CI Tuesday May 11, 2004 When he got back to Osborn CI he requested fair accomodations for his handicap, Bottom bunk, no stairs and handicap shower. The only place in the facility is the medical dorm where he was when he left just over 24 hours prior.

(Continued on page 9)

## FACTS CONT.

C.H.N.S. Wollenhaupt was paged, the nurse informed her that the Plaintiff had been transferred back from Webster C.I. and that she need to authorize for him to go back to the medical dormatory. C.H.N.S. Wollenhaupt refused to give her authorization, subsequently, the Plaintiff was told to go to a cell in a block with no handicap shower with handrails, there is a knee high wall which must be stepped over to enter and exit.

The Plaintiff again requested fair accommodations for his handicap. He was put in punitive segregation on May 11, 2004, where he has remained for the last (12) twelve days, and still he has not be given authorization to go back to the medical dormatory. In addition the Plaintiff has been suffering in constant severe pain day and night, he can hardly put any weight at all on his injured foot (right), despite numerous (daily) requests and grievances. They have left his medication at half of what it has been since 2002.

The Plaintiff did not do anything wrong or violate any rule to warrant this ubrupt and unjustified change in his medication regimen. Had he done anything it would have been immediately stopped. He is being harrassed and now C.H.N.S. Wollenhaupt and Dr. Pillai are acting with deliberate indifference to his serious medical needs causing him to unnecessarily suffer.

(Continued on page 10)

## Conclusion

The plaintiff respectfully requests his motion for preliminary injunction be granted in full. His medical care seems to have stopped and without even a examination. Furthermore C.H.N.S Wollenhaupt and Dr. Pillai should be considered for Rule 20(a) Fed. R. Civ. P. Joinder of parties or Rule 21 Fed. R. Civ. P..

The Plaintiff prays his motion will be granted and his recent unnecessary suffering will end.

respectfully Submitted

Dustin Ruocco
Plaintiff

ATTACHMENTS

1) Emergency Grievance of 5-10-04
2) Ruling from motion for reconsideration
3) Detailed Summary of medical condition/Treatment
4) drug Facts/Product Information oxycontin marked ** Fentanyl conversion **
5) Pre incarceration medical records from last Physician/Specialists
6) URC (Utilization Review committee) recommendations
7) "Physicians orders" And "clinical records" of pages from DOC medical file with med orders from 7/03 - 2/04