DUSTIN RUOCCO            : CIVIL NO. 3:02CV1443
       V.                :
DR. MINGZER TUNG, et al  :

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS RENEWED MOTION FOR A PRELIMINARY INJUNCTION

BACKGROUND.

The Plaintiff (Ruocco) has brought this civil rights action claiming deliberate indifference to his serious medical needs. The Plaintiff severely crushed his right foot with a asphalt paving machine in a work accident. He did every medical procedure suggested by all four of the specialists who treated him regularly in attempts to permanently ease his severe pain from the extensive nerve damage including twice trying lumbar sympathetic blocks in his spinal area, both were unsuccessful. The Plaintiff was kept on a strict pain medication regimen the entire time, which controlled his pain enough so he could function doing daily activities without debilitating pain. His medical records clearly indicate he was doing everything possible to permanently cure the severe pain.

The records from the Plaintiffs last treating physician show he had a planned surgical procedure, a spinal cord stimulator which would electricly shock the nerves constantly to deaden the pain as this was the next planned step to be carried-out it is a delicate procedure on the spinal column, unfortunately he was incarcerated before this could be done.

1.

## STANDARD OF REVIEW

The Second Circuit has stated that the standard to warrant preliminary injunctive relief the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor". Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2nd Cir 2000)

The Plaintiff is suffering actual irreparable damage to both his good ankle and leg by bearing all his weight all the time and to his already severely nerve damaged foot. The Plaintiff is being made to suffer constant debilitating pain to the point that he can-not even walk to meals or perform other normal daily activities, he has survived the summary judgment phase and is clearly the only individual who is suffering a hardship in this matter.

## FACTS

In mid September 2002 with his claim the plaintiff filed a motion for preliminary injunctive relief, he requested the medication regimen he was on prior to his incarceration which was for long-term around-the-clock severe pain management that allowed him to almost function at a normal level, he had needed a strict pain management regimen since his injury however it was interrupted when he was incarcerated and then he wasn't able to function well.

2.

For (18) Eighteen months The plaintiff was kept on The same Pain medication regimen, he did pretty good as long as he limited his walking, he has never gone To The gym or library or To outside recreation. The Plaintiff would only walk To The Chow Hall 2 or 3 Times a month, he feeds himself, This is Part of The reason he is requesting The exact Pain medication regimen he was on at The Time of his incarceration. That regimen would allow him much much more relief and That would allow him To walk more and do more activities, go outside or To The Chow Hall more often.

When The Plaintiff filed for This injuntive relief, The defendants after a few extensions of Time submitted a "detailed summary of medical condition/treatment" The Stated That They were providing The Plaintiff with Oxycontin and Tylenol #3 and That is Comparable To his Pre incarceration medications. They also X-Rayed The plaintiffs left Ankle, however we knew There were no broken bones so A MRI is what should have been done.

IN The Courts April 24, 2003 ruling The Court Stated That Because The plaintiff Conceded he is receiving (most of) The requested/required medications and he can provide no evidence That The medication will be discontinued before The Conclusion of This action. However Should his medication be discontinued Plaintiff may renew his motion, Therefore he is now renewing his motion, his much needed medication was discontinued.

4.

The Plaintiffs medication for around The Clock-Pain-Control was Changed on May 7, 2004, Then Changed again May 10, 2004 IT was Then reduced again by 50% It was Then Stopped all Together, leaving The Plaintiff in absolute and Constant excruciating Pain, barely able To walk, not Sleeping well and because his left leg is again being further damaged from bearing all his weight his Sciatic nerve is really bothering him worse Than ever. The Plaintiff is being used as a Test Case, "Try This medication" "Try That medication" There is over Four and a half years of documented proof of a Successful medication regimen That allow The Plaintiff to function, why Tamper with something That is working well and risk adverse reactions from drugs being Tested on The Plaintiff.

It is Pretty obvious That Since The Plaintiff Passed The Summary Judgement Phase The defendants Talked To or Communicated with Their officers, agents, servants employees and persons in active Concert or Participation with Them and The Plaintiffs medical care was Ubruptly Stopped. The plaintiff even Saw a memo with his name, Dr. Tung and Dr. Giarrantana's name on it at The doctors office, The doctor quickly Put That memo in his desk when he realized That The Plaintiff was Trying To Read That Paper on his desk. All of a Sudden The Plaintiff does Not need around-The-Clock-Pain management any more, Not So, his pain is worse Than ever as The nerves Continue To grow outside The nerve Sheaths.

5.

FACTS CONT.

As the U.R.C. (Utilization Review Committee) Doctor, Dr. Fedus, clearly documented, these flairing nerve endings and excessive dendrites are a definate problem and he to recommended that opiod pain medications be used and that would allow inmate to function in population with minimal symptoms. The damaged nerves growing outside the nerve sheaths are slowly but consistently causing the plaintiff more and more excruciating pain and until there is a surgical procedure to permanently ease the plaintiffs severe pain he must rely on a strict medication regimen as he had for almost (3) Three years prior to his incarceration and for (18) Eighteen months in custody.

Now that his around-the-clock pain medication has been abruptly discontinued, he has not been able to walk to the chow hall at all, he tried and what is normally a (2) Two minute walk for everyone else, it took the defendant (17½) Seventeen and a half minutes of excruciatingly painful walking - one way to eat a meal. The plaintiff has to walk to medical department three times a day which from where he is housed takes everyone else (45-60) Forty five to Sixty Seconds, it takes the plaintiff about (8½) Eight and a half minutes one way in constant severe pain, putting all his weight on his left leg doing more damage to it and that ankle. In addition being made to walk with such a uneven gait over time will effect the plaintiffs back, hips, knees, and ankles, among other things.

6

FACTS CONT

Now that the plaintiffs medication has been discontinued, he has been Re-started on neurontin 300 mg. This is the medication his private doctor used with the pain medication. Now, after in November 2003 the Neurontin was taken away and the plaintiff was told it really didnt effect his pain control needs, now he is being given it as his primary pain medication, this is absurd. The Plaintiff's doctors were, are all specialists, orthopedic, Podiatry, t, Pain. The doctors treating the physician are general Practitioners and definately are not qualified to override the extensively trained specialists line of treatment for the plaintiff.

The Plaintiff feels that it is imperative that a injunction be issued at this time because the defendants and their agents and persons in active concert and participation with them are no longer providing the plaintiff with any medication for around-the-clock-pain management that is even close to being comparable to his pre-incarceration medication regimen and now he is severely suffering, he can hardly do anything, he only comes out of his cell for medication and a shower, which does not have handicap handrails and has a kneewall he must climb over to get into it both very dangerous for the plaintiff luckily he has only fallen twice and was not hurt. The plaintiff only wants to be able to walk enough to keep his health he will be out in possibly another year or year and a half and will immediately be resuming his plan for a spinal cord stimulator with his last treating physician.

7.