UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | | PRISONER |
| DUSTIN RUOCCO | : | CIVIL NO. 3:02CV1443 (DJS)(TPS) |
| v. | : | |
| DR. MINGZER TUNG, ET AL. | : | JULY 20, 2004 |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## BACKGROUND

Plaintiff brings this civil rights action claiming the defendants have been deliberately indifferent to his medical needs. The defendants are: Dr. Mingzer Tung and Dr. David Stein.

The plaintiff claims he "sustained a severe crush injury" to his right foot in 1996. He alleges he received a variety of medical treatment including various forms of pain medication prior to his incarceration in August of 1999. He claims the defendants were deliberately indifferent to his medical problems since 1999.

In his Motion for Preliminary Injunction, the plaintiff requests:

> … the court issue a preliminary injunctive order that the plaintiff be given the exact medication regimen he was on at the time of his incarceration which has been beneficial and allows the plaintiff to function at almost a normal level … Oxycontin 40mg Tid, Percocet, two tablets Tid, Neurontin 300mg Tid …"

**ARGUMENT**

**THE COURT LACKS JURISDICTION OVER DR. PILLAI**

This Court has just denied plaintiff's Motions for Temporary Restraining Order and

Preliminary Injunction for the reason that the defendants in this case are not presently treating

the plaintiff and the defendant cannot order Dr. Pillai to provide the treatment of plaintiff's

choice because the Court lacks personal jurisdiction over Dr. Pillai. See Order, DK #71, June

14, 2004.

Even if the Court had jurisdiction, the present Motion should be denied.

**STANDARD FOR INJUNCTIVE RELIEF**[1]

On June 25, 1996, the United States Supreme Court issued a significant decision in a

class action prisoner case challenging alleged denial of access to court. Lewis v. Casey, 518

U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). This opinion admonishes district court

judges once again to avoid getting involved in the day-to-day running of the state's prison

systems. 116 S.Ct. at 2185. Turner v. Safley, 482 U.S. 78 (1987).

The Supreme Court has long held that injunctive relief is an "extraordinary remedy" that

should not issue as a matter of course or to restrain acts whose injurious consequences are

"merely trifling." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-312 (1982) (quoting

Consolidated Canal Co. v. Mesa Canal Co., 177 U.S. 296, 302 (1900)). Instead, an injunction

"should issue only where the intervention of a court equity 'is essential in order effectually to

protect … rights against injuries otherwise irremediable.'" Id., at 312 (quoting Cavanaugh v.

---

[1]    The standard for injunctive relief under 42 U.S.C. § 1983 for prisoner cases such as the
instant action has been clarified by the Prisoner Litigation Reform Act (PLRA). This

Looney, 248 U.S. 453, 456 (1919)).  According to the Court, "the principles of equity … militate heavily against the grant of an injunction except in the most extraordinary circumstances." Rizzo v. Goode, 423 U.S. 362, 379 (1976).

When a plaintiff seeks permanent injunctive relief from an alleged constitutional violation, he must first establish the fact of the violation.  Rizzo v. Goode, 423 U.S. at 477; Newman v. State of Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982), cert. denied, 460 U.S. 1083 (1983).  If the plaintiff successfully makes such a showing, he must then demonstrate both a continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law.  New York State National Organization For Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989), cert. denied, 460 U.S. 1083 (1983). "Only when that dual burden has been satisfied should the court grant injunctive relief, but even then the relief granted should be no broader than necessary to cure defendants' unconstitutional conduct."  Rosenberg v. Meese, 622 F. Supp. 1451, 1476 (S.D.N.Y. 1985); Kendrick v. Bland, 740 F.2d 432, 437 (6th Cir. 1984); see also PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

Under the PLRA, no injunction may issue unless it is "narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right."  18 U.S.C. § 3626(a)(1)(A) as amended by the PLRA (April 26, 1996).  Plaintiff simply has no immediate irreparable injury in this case.  To the extent plaintiff alleges he suffered a past constitutional injury, which defendants deny, there is an available remedy for money damages.  Moreover, plaintiff's claimed relief is not narrowly drawn, extends into the area of correctional expertise and discretion which is solely the

---

case is governed by the provisions of the PLRA, Pub. L. No. 104-134, 110 Stat. 1321

jurisdiction of the Commissioner, i.e., how to classify prisoners for security risks, and fails to set forth sufficient facts to give plaintiff standing to raise any cognizable federal claim.  See Lewis v. Casey, 116 S.Ct. at 2183 (plaintiff fails to allege any actual injury).

In order to establish irreparable injury, "there must be some actual, viable, presently-existing threat of serious harm – one that is not remote or speculative." City of New York v. Angelbrook Ltd. Partnership, 891 F. Supp. 908, 925 (S.D.N.Y.), aff'd, 58 F.2d 35 (2d Cir. 1995). The fact that the plaintiff has allegedly suffered injury in the past is not sufficient.  "Absent a threat of continuing or future injury, a permanent injunction is unwarranted." Jade Aircraft Sales, Inc. v. City of Bridgeport, 849 F. Supp. 10, 12 (D. Conn. 1994), citing O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects.").  Finally, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." Rizzo v. Goode, 423 U.S. 362, 379 (1976).  "The restraints of federalism must be applied not only when an injunction is sought against the judicial branch of state government, but also when an injunction is urged 'against those in charge of an executive branch of any agency of state and local government [].'" Kendrick v. Bland, 740 F.2d 432, 437 (6th Cir. 1984) (quoting Rizzo v. Goode, 423 U.S. 362, 380 (1976)).  In such cases, "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" Rizzo v. Goode, supra, quoting Stefanelli v. Minard, 342 U.S. 117, 120 (1951); see

_____

(1996).

also <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987); PLRA (April 26, 1996); <u>Casey v. Lewis</u>, 116 S.Ct. at 2185-86.

"[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" <u>Buffalo Forge Co. v. Ampco-Pittsburgh Corp</u>, 638 F.2d 568, 569 (2d Cir. 1981); quoting <u>Medical Society of New York v. Toia</u>, 560 F.2d 535, 538 (2d Cir. 1977). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." <u>Vorbeck v. McNeal</u>, 407 F. Supp. 733, 739 (E.D. Mo.), <u>aff'd</u>, 426 U.S. 943 (1976).

The same standard governs consideration of temporary restraining orders and preliminary injunctions. <u>Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n.</u>, 965 F.2d 1224, 1228 (2d Cir. 1992). In this circuit the standard for injunctive relief is well established. The moving party "must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." <u>Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 33 (2d Cir. 1995). Although a showing that irreparable injury will be suffered before a decision on the merits may be reached is insufficient by itself to require the granting of a preliminary injunction, it is nevertheless the most significant condition which must be demonstrated. <u>Citybank, N.A. v. Citytrust</u>, 756 F.2d 273, 275 (2d Cir. 1985). To demonstrate irreparable harm, the plaintiff must show "'an injury that is either remote nor speculative, but actual and imminent' and that cannot be remedied by an award of monetary damages." <u>Shapiro</u>

5

v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995) (quoting Tucker v. Anthony Realty

Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).

## DELIBERATE INDIFFERENCE

Deliberate indifference by prison officials to a prisoner's serious medical or mental health

need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See

Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such claim, however, the plaintiff

must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to

serious medical needs. Id., at 106. A prisoner must show intent to either deny or unreasonably

delay access to needed medical or mental health care or the wanton infliction of unnecessary

pain by prison personnel. Id., at 104-05. Mere negligence will not support a section 1983 claim;

the conduct complained of must shock the conscience or constitute a barbarous act. Hathaway v.

Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir.

1970).

"Medical malpractice does not become a constitutional violation merely because the

victim is a prisoner." Estelle, 429 U.S. at 106. A treating physician will be liable under the

Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Estelle,

429 U.S. at 105-06. Inmates do not have a constitutional right to the treatment of their choice.

See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison

officials about what constitutes appropriate care does not state a claim cognizable under the

Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard.  Id. At 702.  "[T]he alleged deprivation must be, in objective terms, sufficient serious." Id. (internal quotations marks omitted).  Thus, not all medical or mental health conditions satisfy this component of the standard.  See Id.  Rather, "[a] serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance, 143 F.3d at 702).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Chance, 143 F.3d at 702.  "An official acts with the requisite deliberate indifference when that official 'knows of an disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The plaintiff in this case has been diagnosed with Reflex Sympathetic Dystrophy.  He also has been x-rayed and the results were negative.  Reflex Sympathetic Dystrophy is not diagnosed based on objective testing.  Rather, it depends on the reporting of symptoms by the patient, including his subjective report of pain.  There are numerous medications, both prescription and non-prescription, that may be used to treat a person who claims to be suffering from pain.  The appropriate medication at any point in time varies based on numerous factors. These factors include the condition of the patient's response to different medications.  A physician must always be aware, however, that a patient may desire a prescription medication for

reasons other than the treatment of pain. This is particularly true of persons who have abused

drugs or prescriptions in the past, and is a particular problem in correctional institutions.

In this case, physicians who treatment the plaintiff outside of prison, apparently

prescribed Oxycontin, 40mg 4 times a day; Utram, 50mg 2 times a day; and Percocet, 4-6 times a

day. See Dr. Sood's memorandum of January 27, 1999. This treatment reflects Dr. Sood's

judgment as of January 1999 as to the most appropriate treatment for the plaintiff's symptoms.

Dr. Pesanti recently (November 2002) decided to try Oxycontin, 20mg, and later increased this

medication to 40mg. The plaintiff has also been receiving Tylenol #3. Prior to Dr. Pesanti's

orders, the plaintiff received medication in various forms on a consistent basis throughout his

incarceration.

The medical judgment of Dr. Pillai at this time is that:

1.    Long-term continued use of narcotics, especially when the patient demonstrates behavior

consistent with drug dependency, is not desirable nor appropriate medical treatment.

2.    The present course of recommended treatment for the plaintiff is to seek neurological

recommendations to wean the plaintiff off of his narcotic dependency, as well as further

treatment options.

3.    The above course of treatment is entirely appropriate medical care and consistent with

community standards of care.

4.    Whenever a physician is even suspicious of drug dependency and/or misuse, such

physician should remove narcotics as the method of treatment whether the patient is in the

community or is incarcerated.

5.     The plaintiff has refused the neurological consultation.  In so doing, he is acting against the most appropriate treatment available to him at the time.

Affidavit of Pillai.

The plaintiff wants to continue to utilize narcotics as his long-term treatment for pain. Such treatment is not medically appropriate.  The plaintiff offers no competent medical evidence that it is appropriate long-term treatment.   The drug treatment he received outside of incarceration itself was clearly a temporary solution.  The plaintiff has now turned down a neurological consultation to wean him off narcotic pain medication.  In so doing, the plaintiff refuses to act in his own self-interest.  Unless the Court is prepared to substitute its judgment for that of medical professionals, this Motion must be denied.

## CONCLUSION

The plaintiff's Motion for Preliminary Injunction should be denied.


                                        DEFENDANTS
                                        Dr. Mingzer Tung, et al.

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL


                              BY:     _____/s/_____
                                        Michael J. Lanoue
                                        Assistant Attorney General
                                        110 Sherman Street
                                        Hartford, CT  06105
                                        Federal Bar #ct05195
                                        E-Mail:  michael.lanoue@po.state.ct.us
                                        Tel: (860) 808-5450
                                        Fax: (860) 808-5591


9

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed to the following on this 20th day

of July 2004:

Dustin Ruocco #199580
Osborn Correctional Institution
P.O. Box 100
Somers, CT 06071


_____/s/_____
Michael J. Lanoue
Assistant Attorney General