UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DUSTIN RUOCCO | : | PRISONER<br>CIVIL NO. 3:02CV1443 (DJS)(TPS) |
| v. | : |  |
| DR. MINGZER TUNG, ET AL. | : | JULY 13, 2004 |

## AFFIDAVIT

I, OMPRAKASH PILLAI, being duly sworn, depose and say that:

1. I am a licensed physician in the State of Connecticut and have been continuously licensed since 1996. I am also licensed in Kansas.

2. I received my medical degree at T.D. Medical College in India in 1983.

3. I have practiced medicine in India since 1984 and in the United States since 1990.

4. I am presently working as a primary care physician at the Osborn Correctional Institution in Somers, Connecticut.

5. I have treated and am familiar with the plaintiff, inmate Dustin Ruocco, and his medical problems.

6. I have been treating the plaintiff since September 2002.

7. Prior to his incarceration, the plaintiff's history indicates a crush injury to his right foot.

8. The plaintiff has constantly complained of pain and he has been treated by numerous physicians while incarcerated.

9. The plaintiff has continually asked for a combination of Percocet, Oxycontin and Neurontin for his pain. Percocet and Oxycontin are narcotics.

10. Prior to his incarceration, the plaintiff had received Percocet, Oxycontin and Neurontin for pain. However, his outside doctor indicated this was not a permanent treatment plan and was being used while the plaintiff considered surgical options.

11. In my professional judgment, continued use of narcotics to mask pain is not a desired medical treatment except in very serious causes and as a last resort.

12. The plaintiff in this case had a history of drug abuse prior to incarceration. Numerous correctional physicians have been concerned about the plaintiff's continued desire for narcotic pain medication.

13. Because pain is subjective, it is very difficult at times to make the necessary medical judgment as to what pain medication is appropriate at any point in time.

14. Despite the subjective nature of pain, there are objective symptoms and signs reported by a patient which either support or refute a patient's indication of his level of pain.

15. The plaintiff has been treated with a variety of pain medication since his incarceration in an effort to respond to his reporting of pain.

16. The plaintiff has never received, in prison, the pain medication regimen he now asks the Court to order, i.e., Percocet, Oxycontin and Neurontin.

17. The plaintiff has received Motrin, Tylenol, Tylenol #3, Neurontin, Oxycontin, Fentanyl Patch and Morphine Sulphate for pain while incarcerated.

18. I also tried one other non-narcotic medication to treat the plaintiff which had not previously been tried while in prison.

19. Since he had not previously been treated, in prison, with a non-narcotic medication for his condition, I prescribed Tegretol to treat his condition.

20. After a few days, he indicated it was not working and he did not want to try other non-narcotic medications.

21. The plaintiff has been consistent in his requests for narcotic medications.

22. Dr. Pesanti started the plaintiff on Oxycontin and Tylenol #3 on November 16, 2002. I had previously prescribed Tylenol #3.

23. Dr. Pesanti increased the dosage of Oxycontin in December 2002. Since that time, until November 2003, the plaintiff was being treated with Oxycontin, Tylenol #3 and Neurontin.

24. I decided to take the plaintiff off of Neurontin in November 2003, and since then the plaintiff had been on Tylenol #3 and Oxycontin until May 2004.

25. In May of 2004, I decided to stop the Oxycontin medication. I prescribed crushed Tylenol #3 and Morphine Sulphate liquid. I was concerned about the possibility that the plaintiff was selling medications to other inmates.

26. On May 10, 2004, the plaintiff reported the Morphine was not effective. Since the Morphine Sulphate liquid was the equivalent of the Oxycontin tablets, I believed the plaintiff was seeking an increase in the dosage of pain medication. I prescribed a Fentanyl patch, which is also an equivalent narcotic of the Morphine Sulphate liquid.

27. On May 20, 2004, the plaintiff reported the patch did not work.

28. It was my opinion that the plaintiff was exaggerating his symptoms in order to obtain narcotic tablets in the form of Oxycontin tablets.

29. I decided to try other non-narcotic medications after weaning him off the narcotic patch. I started him on Tegretol and Tylenol #3. This started on May 28, 2004.

30. On June 14, 2004, the plaintiff stated he had side effects from Tegretol and wanted Neurontin. I discontinued the Tegretol and prescribed Neurontin. The plaintiff also requested other treatment such as spinal cord stimulation, which he had declined to have previously.

31. I made a Utilization Review Committee (URC) request for a pain management consult and the Committee approved a consultation with a Neurologist.

32. In my professional judgment, long-term continued use of narcotics, especially when the patient demonstrates behavior consistent with drug dependency, is not desirable nor appropriate medical treatment.

33. The present course of recommended treatment for the plaintiff is to seek neurological recommendations to wean the plaintiff off of his narcotic dependency, as well as further treatment options.

34. The above course of treatment is entirely appropriate medical care and consistent with community standards of care.

35. Whenever a physician is even suspicious of drug dependency and/or misuse, such physician should remove narcotics as the method of treatment whether the patient is in the community or is incarcerated.

36. The plaintiff has refused the neurological consultation. In so doing, he is acting against the most appropriate treatment available to him at the time.

      I have read the foregoing and it is all true and accurate to the best of my knowledge and belief.

                                                                                        _____
                                                                                        Dr. Omprakash Pillai

Subscribed and sworn to before me this _____ day of July, 2004.

                                                                                      _____
                                                                                      Michael J. Lanoue
                                                                                      Commissioner of the Superior Court

Case 3:02-cv-01443-SRU     Document 74-3     Filed 08/30/2004     Page 5 of 7

                DEFENDANT(S)

                RICHARD BLUMENTHAL
                ATTORNEY GENERAL


BY:_____
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT  06105
    Federal Bar #ct
    E-Mail:  name@po.state.ct.us
    Tel: (860) 808-5450
    Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this \_\_\_\_ day of _____ 200\_\_:

_____
Assistant Attorney General